# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CV-60338-RUIZ/STRAUSS

JASON HUNTER BELL,

    Plaintiff,

v.

MACY'S CORP SERVICES, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

THIS MATTER came before the Court upon Defendants' Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Proceedings [DE 48] ("Motion"). The undersigned has reviewed the Motion, the Response [DE 58] and Reply [DE 62] thereto, all exhibits to the Motion, Plaintiff's Affidavit [DE 59], and the record in this case.[2] For the reasons discussed herein, the undersigned **RECOMMENDS** that the Motion [DE 48] be **DENIED WITHOUT PREJUDICE** pending a bench trial on the limited issue of whether Plaintiff timely mailed in the requisite opt-out form in the manner provided for thereunder. If the Court finds for Defendants on that limited issue, the undersigned recommends that the Motion then be **GRANTED**.

## BACKGROUND

Plaintiff commenced this action on February 14, 2020. On April 29, 2020, prior to Defendants' counsel's appearance in this case, the Court, *sua sponte*, entered an Order [DE 24] dismissing Plaintiff's initial Complaint, finding that the Complaint failed to state a claim upon

---

[1] This case has been referred to the undersigned for the issuance of a report and recommendation on dispositive matters [DE 44].

[2] Consistent with DE 55 (Order), the undersigned has not considered any papers filed after the Reply [DE 62] in connection with this Report and Recommendation.

which relief can be granted. The Court permitted Plaintiff to file an Amended Complaint, which he did on May 4, 2020 [DE 25].

Plaintiff was previously an employee of Defendant Macy's Corp. Services ("Macy's"). In this lawsuit, he asserts various discrimination and retaliation claims against Macy's, his (former) supervisor at Macy's, and her supervisor. Pursuant to the Motion, Defendants seek to compel arbitration, asserting that Plaintiff is required to arbitrate his claims in accordance with an arbitration agreement governing his employment relationship with Macy's. All of Macy's employees are subject to the arbitration agreement by virtue of their employment with Macy's; though, they are permitted to opt out of the arbitration agreement within thirty (30) days of being hired by Macy's, something that is communicated to them (including Plaintiff) in multiple ways. *See* DE 48-1 at pp. 18, 20, 40, 48, 49, 51, 52, 56, 58, 75, 76, 78, 79. *See also* Declaration of Maria Vogeler in Support of Defendant's Motion to Compel Arbitration and Dismiss this Action ("Vogeler Decl.") [DE 48-1] at ¶¶ 8, 19-26. Given that Plaintiff asserts he timely opted out of the arbitration agreement (a disputed fact discussed in further detail in the Analysis section below), Plaintiff leaves no doubt that he was at least aware of the opt-out requirements.

The arbitration agreement that Macy's employees are subject to, provided they do not timely opt out, is part of Macy's Solutions InSTORE Program ("Program"). *See* DE 48-1 at pp. 15-35; Vogeler Decl. at ¶¶ 3-14. The Program is an early dispute resolution program with four steps and is designed to resolve employee disputes early. Vogeler Decl. at ¶ 4. Employees who participate in the first three steps (Open Door Policy, Review by the Office of Senior Human Resources Management, Request for Reconsideration) are not bound by the decision rendered at any of those steps; only Macy's is. *Id.* at ¶ 9. *See also* DE 48-1 at pp. 17-24. Moreover, employees

are not required to participate in the first three steps before proceeding to Step 4, which is the arbitration step. Vogeler Decl. at ¶ 9.

Macy's adopted a Plan Document (prior to hiring Plaintiff) that sets forth the terms governing the Program, including the terms of the arbitration agreement. *Id.* at ¶ 6. Though it has been revised on a couple of occasions, the June 1, 2014 version is the version applicable to Plaintiff. *Id.* The June 1, 2014 version of the Plan Document was included within a New Hire Brochure used for Plaintiff and other employees that were hired in August 2014. *Id.* at ¶ 21. The brochure also contained the Early Dispute Resolution Program Election Form ("Opt-Out Form") that employees needed to complete and return if they wanted to opt out of the arbitration agreement. *See id.*; DE 48-1 at pp. 51-52. The short Opt-Out Form explains the simple steps that need to be taken to opt out. *See* Vogeler Decl. at ¶ 22; DE 48-1 at pp. 51-52.

At training, Plaintiff viewed a Solutions InStore New Hire Acknowledgement form, clicked an "I certify" link at the bottom of the form regarding his receipt of Macy's brochure and Plan Document, and then electronically signed the acknowledgement form; he also electronically signed various other forms. *See* Declaration of Barry Sherrick in Support of Defendant's Motion to Compel Arbitration and Dismiss this Action ("Sherrick Decl.") [DE 48-2] at ¶¶ 4-15. *See also* DE 48-2 at pp. 20-22. In the acknowledgement form, in addition to acknowledging that he received the brochure and Plan Document, Plaintiff also acknowledged, among other things, that:

> I understand that I have thirty (30) days from my date of hire to review this information and postmark my election form to the Office of Solutions InSTORE if I wish to opt out of Step 4, the final step of the Company's early dispute resolution program, Solutions InSTORE, which is final and binding arbitration. I understand that I will be automatically enrolled in the program and subject to final and binding arbitration from my date of hire unless, within thirty (30) days of my date of hire, I take the steps required to opt out of Step 4 - Arbitration.
> . . .
> I understand that if I do not opt out of this program, any disputes or claims relating to my employment, other than those expressly excluded from arbitration in the Plan

3

> document, will be resolved using the Solutions InSTORE process described in the brochure and Plan Document. The process continues to apply to such employment-related disputes even after my employment ends.
> . . .
> I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE.

DE 48-2 at pp. 20-22.

Plaintiff raises an issue related to the absence of his social security number from the electronically-executed acknowledgement form, but he does not deny signing the form (electronically); nor does he deny receiving the relevant documents (though he asserts that the documents he did receive are different than those attached to the declarations submitted by Defendants). *See infra* note 3.

Under the arbitration agreement (for employees that do not opt out), an employee bears minimal arbitration costs, if any, and Macy's reimburses the employee for limited out-of-pocket attorneys' fees and incidental costs incurred by the employee, absent a finding that the employee's claim was frivolous. Vogeler Decl. at ¶ 13(a), (c). At arbitration, Macy's only brings an attorney if the employee has an attorney. *Id.* at ¶13(b). Additionally, the arbitration agreement contains many mutual terms including those related to arbitration discovery and joint selection of the arbitrator. *See id.* at ¶ 13(d)-(e).

## **LEGAL STANDARD**

An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Federal Arbitration Act ("FAA") "creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*,

4

745 F.3d 1111, 1115-16 (11th Cir. 2014)). However, the presumption of arbitrability "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* (quoting *Dasher*, 745 F.3d at 1116). Consequently, "[t]he party asserting the existence of a contract has the burden of proving its existence and its terms." *Id.* at 1330 (citation omitted). *See also CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019) ("The party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists.").

When a motion to compel arbitration is filed, courts consider the following: "(1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Gomez v. Allied Professionals Ins. Co.*, No. 19-CV-24994, 2020 WL 2197865, at *3 (S.D. Fla. May 6, 2020) (citations omitted). *See also Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) ("Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." (citation omitted)). Assuming a defendant has carried its burden to prove the existence of an arbitration agreement, "[a] plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Gomez*, 2020 WL 2197865, at *3 (quoting *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013)).

## ANALYSIS

Plaintiff raises three main arguments in opposition to the Motion. First, he contends that no arbitration agreement exists between the parties because he timely opted out of the agreement in accordance with its terms and, thus, did not accept Macy's offer to enter into an arbitration agreement. Second, even if Plaintiff were not to prevail on the opt-out issue, he argues that the

5

subject arbitration agreement is unenforceable because it is unconscionable. Third, Plaintiff asserts that Defendants waived any right they may have had to participate in arbitration. However, Plaintiff has not contested that Plaintiff's claims are arbitrable (assuming a valid agreement exists).

As discussed herein, the undersigned recommends that the Court summarily proceed to a bench trial on the issue of whether Plaintiff timely opted out of the subject arbitration agreement. If he did not, a valid arbitration agreement exists, and the Motion should be granted, because Plaintiff's other arguments – unconscionability and waiver – are unavailing.

## I. EXISTENCE OF ARBITRATION AGREEMENT

Whether the parties entered into the subject arbitration agreement depends on whether Plaintiff timely opted out of the agreement in accordance with the terms thereof. The existence of the agreement is otherwise not at issue.[3] The undersigned finds that, while a close call, there is a

---

[3] Although Plaintiff implies, without actually arguing, that Defendants failed to demonstrate the existence of an arbitration agreement between Macy's and Plaintiff for reasons beyond just the opt-out issue, that is clearly not the case. First, Plaintiff claims that the arbitration documents presented by Macy's [DE 48-1 & 48-2] are not the same materials that were provided to Plaintiff at training. Relatedly, Plaintiff asserts that Macy's admits this because the Sherrick declaration states that only examples of documents are attached thereto (as opposed to the specific documents used). Plaintiff is incorrect. While the Sherrick declaration provides examples of certain pages or screenshots, Sherrick specifically states, with respect to the acknowledgement form provided (wherein Plaintiff acknowledges receiving the brochure and plan document), that "Macy's has used different versions of this form over time but a copy of the particular version viewed and signed by the employee is saved to the Online Forms system along with the employee's electronic signature (see Exhibit G for the version viewed by Plaintiff Jason H. Bell)." Sherrick Decl. at ¶ 4. *See also* DE 48-2 at pp. 20-22. Second, Plaintiff states that the acknowledgement form attached to the Sherrick Declaration [DE 48-2 at pp. 20-22] reflects an incorrect social security number. Plaintiff, however, clearly overlooks Macy's explanation that the acknowledgement form masks Plaintiff's social security number with an internal number to protect against identity theft. Sherrick Decl. at ¶ 14. Moreover, with respect to the foregoing arguments, Plaintiff failed to provide any evidence. Although the Court afforded Plaintiff with an opportunity to submit an affidavit in opposition to the Motion [*see* DE 55], which Plaintiff did [DE 59], his affidavit is silent on the aforementioned issues. Thus, beyond the opt-out issue, there is no other genuine dispute as to the making of the arbitration agreement.

6

genuine factual dispute as to whether Plaintiff opted out, and if he did, whether he timely did so. Thus, a bench trial on the issue is necessary.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). When the making of an arbitration agreement is "in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. To determine whether the making of the agreement is in issue, courts apply a summary judgment-like standard. *Bazemore*, 827 F.3d at 1333. Thus, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* (citing Fed. R. Civ. P. 56(a)). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted). The Eleventh Circuit "repeatedly has emphasized that '*state law* generally governs whether an enforceable contract or agreement to arbitrate exists.'" *Bazemore*, 827 F.3d at 1329 (citation omitted).

Here, as indicated above, the only dispute concerning whether an arbitration agreement exists is whether Plaintiff timely mailed in the requisite Opt-Out Form pursuant to the terms of the arbitration agreement. Specifically, the issue is whether Plaintiff mailed in (postmarked) the Opt-Out Form [*see* DE 48-1 at pp. 75-76] to Solutions InStore's Ohio address (P.O. Box 8083, Mason, OH 45040-9853) within thirty (30) days of when Plaintiff was hired in early August 2014.[4]

---

[4] Plaintiff asserts his hire/training date was August 1, 2014. Defendants assert it was August 8, 2014. While the evidence showing it was August 8, 2014 is more compelling, the factual dispute as to the specific date is immaterial as the parties dispute whether Plaintiff opted out at all.

7

Defendants meet their initial burden on the opt-out issue, for summary judgment purposes, by providing a declaration to show that Macy's never received an opt-out form from Plaintiff. *See* Vogeler Decl. at ¶ 27 ("I personally reviewed the PeopleSoft Human Resource database to determine whether or not Jason Bell returned an Election Form within 30 days of his hire on August 8, 2014. According to the database, Mr. Bell never returned an Election Form. I also personally reviewed the appropriate areas of the correct file cabinet in the Office of Solutions InSTORE (based on Mr. Bell's Social Security Number). There was no Election Form returned by Mr. Bell.").[5]

In response, Plaintiff submits an affidavit stating, in pertinent part, the following:

> I mailed the **"OPT-OUT"** to the Step 4 agreement to the Macy's Solutions InStore program on August 01, 2014 or thereabout as a New Hire within the 30 days time line as per Macy's instructions in the training brochure/pamphlet/booklet or prospectus that I received in the five (5) hours of Training Orientation class for New Hires at Macy's Broward Westfield Mall in Plantation, Florida.

[DE 59]. In their Reply, Defendants note several issues with Plaintiff's affidavit and argue that Plaintiff's affidavit is insufficient to create a genuine issue of material fact as to whether Plaintiff opted out.

---

[5] *See also* Vogeler Decl. at ¶ 16 ("The Office of Solutions InSTORE has regular mail collection procedures designed to ensure that all opt-out Election Forms mailed to the Ohio address as instructed are recorded and accounted for. Select employees of Macy's Credit and Customer Services, Inc. ("MCCS"), a division of Macy's, Inc., receive the Election Forms, open and date-stamp them. After reviewing the Election Form to ensure it is complete, MCCS records the employee's opt-out status in PeopleSoft, a record regularly used by the Office of Solutions InSTORE as part of the process in verifying opt-out status. The electronic information in PeopleSoft is maintained in the ordinary course of business and is accessed and used regularly by me and my team in the Office of Solutions InSTORE in implementing and enforcing the Solutions InSTORE Program."); Vogeler Decl. at ¶ 17 ("MCCS sends the Election Forms to the Office of Solutions InSTORE, where they are stored in locked file cabinets and organized by the Social Security Number of the employees who have chosen to opt out of Step 4-Arbitration. These records are maintained in the ordinary course of business. I and the other staff in the Office of Solutions InSTORE rely upon these records in the performance of our job duties.").

First, Defendants contend that Plaintiff fails to show he timely postmarked his Opt-Out Form because he merely asserts that he mailed in the Opt-Out Form "on August 01, 2014 or thereabout." However, the undersigned does not interpret that to mean Plaintiff mailed in the Opt-Out Form more than thirty (30) days later, particularly when he attests that he mailed the form in "within the 30 day[] timeline." While Plaintiff should have been more precise, his affidavit is at least sufficient to raise a genuine issue in this regard, particularly considering his *pro se* status.

Second, Defendants claim that Plaintiff failed to show he mailed the form to the correct address. While Plaintiff's affidavit does not list the exact address to which he asserts he mailed the form, Plaintiff does at least attest that he mailed the form to Macy's Solutions InStore program per Macy's instructions in the materials provided.

Third, Defendants assert that it would have been impossible for Plaintiff to have mailed in the Opt-Out Form prior to August 8, 2014, as he did not receive or review the form or other related Macy's materials until August 8, 2014. While the date discrepancy raises some questions about Plaintiff's affidavit, and while Macy's evidence on the training/hire date is far more compelling, the mere one-week discrepancy (from 6 years ago) is insufficient to change the fact that Plaintiff's affidavit creates a genuine issue of material fact (albeit barely).

Fourth, Defendants argue that Plaintiff's affidavit is insufficient because it does not state he filled in his personal information to complete the election form and fails to state whether Plaintiff affixed proper postage before allegedly mailing the form. However, taking the evidence in the light most favorable to Plaintiff, it is reasonable to infer that Plaintiff completed the form before mailing it in. It is also reasonable to infer that someone mailing an item uses proper postage. Indeed, inferring an absence of proper postage from the affidavit's silence on the question would be unreasonable.

Finally, Defendants argue that Plaintiff was required to keep a copy of the completed Opt-Out Form. However, while the form states, "[p]lease keep a copy of this form," that does not mean that an employee is *required* to keep a copy in order to effectuate his opt-out. Although Plaintiff's failure to keep and present a copy may be relevant to whether his testimony on the opt-out issue is ultimately persuasive, the mere fact he did not keep a copy does not negate the fact that his affidavit establishes a genuine factual dispute.

In addition to raising the foregoing arguments, Defendants rely on *Dubois v. Macy's East Inc.* to argue that Plaintiff has failed to raise a genuine dispute of material fact on the opt-out issue. *See* No. 06-cv-6522, 2007 WL 3193169, at *4 (E.D.N.Y. July 13, 2007), *report and recommendation adopted*, 2007 WL 4224781 (E.D.N.Y. Nov. 27, 2007), *aff'd*, 338 F. App'x 32 (2d Cir. 2009). However, *Dubois* is distinguishable. In *Dubois*, the court noted that Solutions InStore sent confirmation letters to employees, sending one version to employees who opted out, and another version to employees who did not. *Id.* at *2. The employee in *Dubois* admitted that he did not receive a letter confirming that he opted out. *Id.* at *3. Instead, he received a welcome letter from Solutions InStore. Nevertheless, the employee never contacted Solutions InStore as directed. He only raised the issue with a supervisor. *Id.* In rejecting the employee's claim that he opted out, the court found that the record evidence controverted his claim. Specifically, the court recognized that, while the employee was aware from the opt-out form that he should contact Solutions InStore if he did not receive confirmation that the opt-out form was received by a date certain, the plaintiff did not contact Solutions InStore by that date and "effectively acquiesced" to arbitration by failing to take further action when he instead received the letter welcoming him to the Solutions InStore program. *Id.* at *2-5. Unlike *Dubois*, in this case, it appears that Macy's no

10

longer sends confirmation letters. In fact, the Opt-Out Form does not contain the same language in that regard, and there is no record evidence of Plaintiff "effectively acquiesc[ing]."

Additionally, in affirming the district court's ruling in *Dubois*, the Second Circuit noted that the employee's sworn declaration merely stated, in a conclusory fashion, that the form "was completed and returned to the Office of Solutions InStore." 338 F. App'x at 34. The Second Circuit specifically pointed out that "[t]he declaration [did] not state that DuBois himself returned the form and does not state whether the form was mailed or hand-delivered—and if hand-delivered, delivered to whom." *Id*. In this case, however, Plaintiff specifically states in his affidavit that "*I mailed* the **'OPT-OUT'** to the Step 4 agreement to the Macy's Solutions InStore program . . . ." (emphasis added). Overall, Plaintiff's affidavit provides borderline-specific and borderline-colorable facts that, while sparse, are not entirely conclusory. Given Plaintiff's *pro se* status and that he is the non-movant, the undersigned finds that Plaintiff's affidavit presents enough evidence to allow a reasonable factfinder to find for him on the opt-out issue.

Having determined that there is a genuine dispute of material fact regarding whether Plaintiff opted out of the arbitration agreement, the Court must move forward with a trial in accordance with 9 U.S.C. § 4. *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). As no jury trial on the issue has been requested – in fact, Plaintiff's Response only mentions the potential need for a *bench* trial on the making of the agreement [*see* DE 58 at ¶ 76][6] – the Court should summarily proceed to a bench trial on the opt-out issue. *See Burch*, 861 F.3d at 1346-50; 9 U.S.C. § 4.

---

[6] Although a general jury demand in a complaint is insufficient to preserve the statutory right to a jury trial under 9 U.S.C. § 4, *Burch*, 861 F.3d at 1349-50, it is worth noting that, even in the Amended Complaint, Plaintiff demanded a bench trial in this case, not a jury trial [DE 25 at p. 22].

11

## II.    UNCONSCIONABILITY

The subject arbitration agreement is not unconscionable. "Under the FAA, an agreement can be defeated by fraud, duress, unconscionability, or another generally applicable contract defense." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2017) (citation and internal quotation marks omitted). "Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions that are overreaches by one party to gain 'an unjust and undeserved advantage which it would be inequitable to permit him to enforce.'" *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157 (Fla. 2014) (citation omitted). The doctrine encompasses "an *absence of meaningful choice* on the part of one of the parties together with contract terms which are *unreasonably favorable to the other party*." *Robinson v. NBC Universal Cable*, No. 17-CV-81324, 2018 WL 8620154, at *2 (S.D. Fla. Apr. 23, 2018) (quoting *Basulto*, 141 So. 3d at 1157). "The absence of meaningful choice when entering into the contract is often referred to as procedural unconscionability, which 'relates to the manner in which the contract was entered,' and the unreasonableness of the terms is often referred to as substantive unconscionability, which 'focuses on the agreement itself.'" *Id.* (quoting *Basulto*, 141 So. 3d at 1157-58).

A party seeking to avoid enforcement of an allegedly unconscionable arbitration agreement must show both procedural and substantive unconscionability. *Id.* (citing *Basulto*, 141 So. 3d at 1158). Although "both elements must be present, they need not be present to the same degree." *Basulto*, 141 So. 3d at 1159. In fact, a balancing or sliding-scale approach is utilized. *Id.* This approach allows for "one prong to outweigh another provided that there is at least a modicum of the weaker prong." *Id.* (citation omitted). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citation omitted). At bottom, "although the concept

of unconscionability is made up of both a procedural component and a substantive component, it often involves an evaluation in which the two principles are intertwined." *Id.* at 1160. Consequently, "both should be evaluated interdependently rather than as independent elements." *Id.* at 1161.

A court's evaluation of procedural unconscionability generally entails consideration of the following:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) (citation omitted). On the other hand, the substantive unconscionability inquiry "focuses on the terms of the agreement itself and whether the terms of the contract are 'unreasonable and unfair.'" *Id.* at 1139 (citations omitted). An agreement is substantively unconscionable if its terms are "so outrageously unfair as to shock the judicial conscience." *Lazo v. W. Coast Trucking Corp.*, No. 1:17-CV-21165-UU, 2017 WL 9324346, at *3 (S.D. Fla. June 12, 2017) (citation omitted).

Plaintiff argues that the arbitration agreement is unconscionable for several reasons, most of which pertain to procedural unconscionability. He speculates that the arbitration provisions were hidden, without explanation. *See* DE 58 ("[T]he arbitration agreement was buried in paperwork with a hidden clause that *most likely states* . . . ." (emphasis added)). Relatedly, he implies that the 5-hour length of training and the high volume of information being provided interfered with employees' ability to comprehend the arbitration and opt-out requirements. Notwithstanding the length of training, Plaintiff complains that no Macy's supervisors or employees, other than a secretary, were available to assist employees with any questions at training. Plaintiff also takes

13

issue with the fact that new employees are only provided with 30 days to mail in their opt-out forms (in Plaintiff's words, "snooze [you] lose"), and he argues that by making opting in the default, the process is designed to make it difficult for employees to opt out. In other words, employees only need to affirmatively act if they want to opt out – opting in requires no affirmative action. Finally, Plaintiff argues that the arbitration agreement is substantively unconscionable because it is "binding for life."

Plaintiff's unconscionability arguments are unavailing. First and foremost, Plaintiff's Response very clearly shows that he was well-aware he would be subject to the arbitration agreement if he did not timely mail in the Opt-Out Form, as he claims that he did mail in the Opt-Out Form. Plaintiff's evident actual knowledge of the opt-out requirements undercuts his procedural unconscionability arguments, which are largely premised on the notion that Macy's failed to effectively communicate arbitration and opt-out information during training. Thus, not only did Plaintiff have the ability and opportunity to understand the disputed terms of the contract, he apparently did in fact understand them. Moreover, by providing Plaintiff with the ability to opt out, through a relatively simple procedure, Plaintiff had a meaningful choice at the time the agreement was allegedly entered into and was not presented with terms on a "take it or leave it" basis – he was able to accept Macy's offer of employment without accepting its arbitration offer.

With respect to Plaintiff's substantive unconscionability argument, Plaintiff does not argue that there is a lack of mutuality with any terms of the arbitration agreement or otherwise show how the agreement is unfair. To the contrary, as Defendants note, the arbitration terms are highly mutual. Ultimately, the terms of the arbitration agreement are not unreasonably favorable to Defendants, and they certainly do not shock, let alone concern, the judicial conscience. Rather, Plaintiff argues that the arbitration agreement, which only applies to employment-related disputes,

14

is "binding for life." Given the termination of Plaintiff's employment in 2018, and the existence of statutes of limitation, there is a limited window during which such disputes may even be brought.[7]

Furthermore, Defendants have made numerous compelling arguments to establish that the arbitration agreement is not procedurally or substantively unconscionable [*see* DE 46 at pp. 18-20; DE 62 at pp. 7-8], and several courts have persuasively rejected unconscionability challenges to Macy's arbitration agreement. *See, e.g.*, *Paxton v. Macy's W. Stores, Inc.*, No. 1:18-cv-00132, 2018 WL 4297763, at *6-10 (E.D. Cal. Sept. 7, 2018); *Harrison v. Macy's, Inc.*, No. 1:17-cv-3257, 2018 WL 10716544, at *2-3 (N.D. Ga. Mar. 6, 2018), *vacated and remanded on other grounds*, 789 F. App'x 843 (11th Cir. 2020); *Barrasso v. Macy's Retail Holdings, Inc.*, No. 1:15-cv-13098-ADB, 2016 WL 1449567, at *5-6 (D. Mass. Apr. 12, 2016); *Dorward v. Macy's Inc.*, No. 2:10-cv-669-FTM-29, 2011 WL 2893118, at *4 (M.D. Fla. July 20, 2011).[8]

For the foregoing reasons, Plaintiff has failed to demonstrate both procedural and substantive unconscionability.

---

[7] Plaintiff also suggests that compelling arbitration would violate his civil rights and deprive him of due process. Yet, it is well-settled that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)). This is so even when the arbitration agreement at issue requires arbitration of claims that arise under anti-discrimination statutes. *See Circuit City*, 532 U.S. at 109-10 (arbitration provision at issue compelled arbitration of claims under, *inter alia*, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act). Thus, it is clear that Plaintiff's claims, which indisputably fall within the scope of the arbitration agreement, must be referred to arbitration if the Court finds that the arbitration agreement exists.

[8] Although Macy's has only used the exact arbitration agreement at issue in this case since June 1, 2014 [*see* Vogeler Decl. at ¶¶ 4-6], it previously used similar versions of the agreement with minor differences. *See Harrison*, 2018 WL 10716544, at *2. Therefore, cases examining earlier versions of Macy's arbitration agreement are still generally applicable.

### III.    WAIVER

Plaintiff contends that Defendants waived their right to arbitration for two separate reasons. First, he asserts that his supervisor refused to allow him to speak with a human resources representative at the time Plaintiff's employment was terminated. This argument is meritless. Plaintiff fails to explain how this action waived Defendants' right to arbitration. To the extent Plaintiff posits that Defendants prevented Plaintiff from proceeding to Step 2 of the Program (Review by the Office of Senior Human Resources Management), this argument fails. Among other issues, Plaintiff does not state that he made a "written request" as is necessary to commence Step 2. But even if he had, that would still be legally insufficient to demonstrate that Defendants waived the right to arbitrate under the arbitration agreement.

Second, Plaintiff asserts that Defendants waived the right to arbitration by participating in EEOC proceedings through and including the issuance of the EEOC's decision in November 2019. This argument is also meritless. *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222-23 (11th Cir. 2000) (finding argument that a party waived the right to arbitration "by failing to raise the arbitration issue with the EEOC" to be meritless, and noting that the party was "under no obligation to make a pre-suit demand for arbitration." (citation omitted)); *Darden Restaurants, Inc. v. Ostanne*, 255 So. 3d 382, 385 (Fla. 4th DCA 2018) ("An employer does not waive arbitration by participating in EEOC proceedings.").[9] Ultimately, Defendants moved to compel

---

[9] Notably, the Plan Document states that "[n]othing in the Solutions InSTORE Program, however, prevents you from filing, at any time, a charge or complaint with a government administrative agency like the Equal Employment Opportunity Commission . . . ." *E.g.*, DE 48-1 at p. 17. In other words, the arbitration agreement here did not contemplate pre-empting EEOC proceedings. Therefore, had Macy's sought arbitration during the EEOC proceedings (which Plaintiff implies Macy's should have), Plaintiff could have (rightfully) claimed that Macy's demand for arbitration was premature under the arbitration agreement.

arbitration shortly after appearing in this case, and they did so before filing any other responsive motions or pleadings. Thus, they clearly have not waived their right to arbitration.

## CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that the District Court **DENY** the Motion [DE 48] **WITHOUT PREJUDICE** and that it hold a trial on the issue of whether Plaintiff timely opted out of the subject arbitration agreement. If the Court finds that Plaintiff failed to timely opt out in accordance with the terms of the agreement, the undersigned recommends that the District Court revisit its ruling, **GRANT** the Motion, and compel arbitration.[10]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

---

[10] The undersigned also notes that Plaintiff asserts he is entitled to limited discovery related to the Motion. However, that issue is not squarely before the Court in the current Motion [DE 48], and Plaintiff has not filed any motion requesting leave to serve discovery. In any event, there is no basis for discovery regarding any of the issues related to the Motion with the *potential* exception of the opt-out issue. If the District Court accepts this Report and Recommendation and determines that the ultimate outcome of the Motion depends on whether Plaintiff timely opted out, Plaintiff should be able to seek (but not necessarily be entitled to receive) leave to conduct limited discovery, over a very short period of time, before any trial on the opt-out issue. At this juncture, however, Plaintiff has failed to demonstrate a need for any specific discovery, and again, his request to conduct discovery is not properly before the Court.

**The Clerk of Court is DIRECTED to mail a copy of this Report and Recommendation to Plaintiff at 1801 NW 75 Avenue, Apt 204, Plantation, FL 33313.**

**DONE AND SUBMITTED** in Fort Lauderdale, Florida on this 24th day of July 2020.

*/s/ Jared Strauss*
Jared M. Strauss
United States Magistrate Judge